STATE OF NORTH CAROLINA v. RUDOLPH BERRY

No. 815SC1398

(Filed 20 July 1982)

1. **Burglary and Unlawful Breakings § 5.5; Criminal Law § 60.5— breaking and entering—reliance on fingerprint evidence—sufficiency of evidence**

    In a prosecution for breaking or entering, where the main evidence upon which the State relied was fingerprint evidence, there was substantial evidence of circumstances from which the jury could find that the fingerprint could have been impressed only at the time the crime was committed where the prosecuting witness testified that she lived alone, that on the day of the crime she left her house at 1:00 p.m. and returned at 5:00 p.m., and that she did not know the defendant and to her knowledge he had never been in her house. The fact that the prosecuting witness testified that her children came home unexpectedly from time to time did not make the fingerprint evidence insufficient since there is no rule that when the sole occupant of a house has testified that he or she does not know the defendant and to his or her knowledge the defendant has never been in his or her home, the State must then put on evidence from every person who might have brought a visitor to the house that he or she has not invited the defendant to the house.

2. **Burglary and Unlawful Breakings § 7— lesser offense of misdemeanor breaking or entering—evidence not supporting**

    The trial court did not err in failing to submit to the jury misdemeanor breaking or entering in addition to felonious breaking or entering where all the evidence was to the effect that whoever broke into the prosecuting witness's house intended to take the television set.

Judge WHICHARD dissenting.

APPEAL by defendant from *Strickland, Judge.* Judgment entered 10 June 1981 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 9 June 1982.

The defendant was tried for felonious breaking or entering and felonious larceny. Cornelia Vanleeuwen Swart testified that she lived alone on Wayne Drive in Wilmington. On 30 October 1979 she left her house at 1:00 p.m. and returned 5:00 p.m. She found her front door open and her television set behind it. She noticed that her back door was also open and the windowpanes had been knocked out. She said the television was in the den and both doors were closed, locked and undamaged when she left at 1:00. She gave no one permission to enter her house. She testified she did not know the defendant and to her knowledge he had

never been in her house. On cross-examination, Mrs. Swart testified that no one did yard work or housework for her; that her children came home unexpectedly from time to time; and that she was not always present when they visited.

Billy Hennessey, a twelve-year-old who was playing at a neighbor's house, testified that on 30 October 1979 he saw a black male come around the side of Mrs. Swart's house. He thought he was a plumber and said he was afraid of a dog that was barking. When he saw Billy, the man ran. He never identified the defendant as the man he saw at Mrs. Swart's house.

Steven Eilinsfeld testified that he worked with the identification section of the Wilmington Police Department on 30 October 1979. He searched the house for fingerprints and found one identifiable latent print on the inside rear kitchen door. Officer J. F. Newber, who was found to be an expert in the field of fingerprint identification, testified that he compared this print with the print of the defendant's right middle finger and that it was his opinion that the latent impression lifted from Mrs. Swart's rear door and the impression on the defendant's fingerprint card were made by one and the same person.

The defendant presented no evidence. The jury found the defendant guilty of felonious breaking or entering and not guilty of larceny.

*Attorney General Edmisten, by Assistant Attorney General Reginald L. Watkins, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender James H. Gold, for defendant appellant.*

WEBB, Judge.

[1]  The defendant first assigns error to the denial of his motion to dismiss. He contends the case should have been dismissed because the evidence as to his fingerprint found at Mrs. Swart's house was not sufficient to support a conviction. We agree that without the fingerprint there is not sufficient evidence to convict the defendant in this case. When the State relies on a fingerprint found at the scene of the crime, in order to withstand a motion to dismiss, there must be substantial evidence of circumstances from which the jury can find that the fingerprint could have been impressed only at the time the crime was committed. The defendant

State v. Berry

relies on *State v. Bass,* 303 N.C. 267, 278 S.E. 2d 209 (1981), and *State v. Scott,* 296 N.C. 519, 251 S.E. 2d 414 (1979). In *Bass* our Supreme Court held that fingerprint evidence was not sufficient to support a conviction when the defendant testified he had attempted to break into the residence two weeks prior to the breaking for which he was being tried. An officer verified the attempted break-in admitted by the defendant closely followed in detail the attempted break-in as shown by the police investigation. In *Scott* our Supreme Court held fingerprint evidence was not sufficient to convict the defendant of murder. In that case the niece of the victim lived in the house with him but left home each weekday from 7:00 a.m. until approximately 6:00 p.m. She testified that to her knowledge the defendant had never been in the house. Our Supreme Court held there was not substantial evidence of circumstances from which the jury could find the fingerprints could have been impressed only at the time the crime was committed. The Supreme Court said the niece of the deceased could not say the defendant was not on the premises at some time when she was not present. The Supreme Court in *Scott* distinguished *State v. Tew,* 234 N.C. 612, 68 S.E. 2d 291 (1951), on the ground that in *Tew* the proprietor of a service station testified that she personally attended the service station and was able to testify of her own knowledge that the defendant had never visited the station. In *Tew* this was held to be substantial evidence from which the jury could find the fingerprints could have been impressed only at the time the crime was committed. We believe we are bound by *Tew.* In this case the prosecuting witness, who was the only person living in the house, testified that she did not know the defendant and to her knowledge he had never been in her house. The defendant contends the fact that the prosecuting witness testified that her children came home unexpectedly from time to time is evidence from which it could be concluded that the defendant could have been to the house when the children were there and Mrs. Swart was not. We do not believe the rule is that when the sole occupant of a house has testified that he or she does not know the defendant and to his or her knowledge the defendant has never been in his or her home, the State must then put on evidence from every person who might have brought a visitor to the house that he or she has not invited the defendant to the house. The defendant's first assignment of error is overruled.

---

State v. Berry

---

[2] In his second assignment of error the defendant contends the court should have submitted to the jury misdemeanor breaking or entering in addition to felonious breaking or entering. The defendant relies on *State v. Worthey*, 270 N.C. 444, 154 S.E. 2d 515 (1967); *State v. Jones*, 264 N.C. 134, 141 S.E. 2d 27 (1965); and *State v. Biggs*, 3 N.C. App. 589, 165 S.E. 2d 560 (1969). Those cases involved breakings or enterings where nothing was taken or disturbed inside the building and from this it could be inferred the defendants did not intend to take anything. In this case all the evidence showed a television set had been moved from the den to the front door. All the evidence was to the effect that whoever broke into Mrs. Swart's house intended to take the television set. This would make it a felonious breaking or entering. There was no evidence of a misdemeanor breaking or entering.

No error.

Judge CLARK concurs.

Judge WHICHARD dissents.

Judge WHICHARD dissenting.

I find *State v. Scott*, 296 N.C. 519, 251 S.E. 2d 414 (1979), rather than *State v. Tew*, 234 N.C. 612, 68 S.E. 2d 291 (1951), the controlling authority. In *Scott* the State's key witness worked outside the home where the fingerprint in question was found. She was generally absent from the home from early morning until late afternoon. The Supreme Court noted that she thus was unable to testify from her personal knowledge as to who visited the home during her absence. *Scott*, 296 N.C. at 526, 251 S.E. 2d at 418. It reversed defendant's conviction, stating:

> In the absence of additional evidence, it is not unreasonable to infer that the defendant's fingerprint might have been impressed . . . at some time prior to the homicide. In short, the evidence presented by the State does not substantially exclude the possibility that the defendant might have visited the house for some lawful or unlawful purpose in the weeks preceding the murder.

*Id.* at 526, 251 S.E. 2d at 418-19.

State v. Berry

Here, absent the victim's testimony that her children had access to the house and came home unexpectedly from time to time, I would agree that *State v. Tew, supra,* controls. *See also State v. Dorsett,* 18 N.C. App. 318, 196 S.E. 2d 591 (1973). In my view, however, that testimony places this case within the rationale and holding in *Scott.* Because her children had access to the house and came there unexpectedly at times, and because the victim was generally away from the house during the day, the victim, like the witness in *Scott,* "was simply not in a position to know who came into the house" during her absence. *Scott,* 296 N.C. at 526, 251 S.E. 2d at 419. Absent evidence that the children had not granted defendant access, the evidence presented by the State does not "substantially exclude the possibility" that defendant visited the house at the behest of one or more of the victim's children at a time other than when the breaking occurred. *Id.*

I concurred in the majority opinion in *State v. Strange,* 57 N.C. App. 263, 291 S.E. 2d 320 (1982), because I found it distinguishable from *Scott* in that there was in *Strange,* in addition to the fingerprint evidence, evidence that (1) the defendant had been in the victim's house on the day the victim's truck was discovered to be missing, and (2) an ignition key to the truck "was evidently in the kitchen" when defendant was there. *Strange,* 57 N.C. App. at 266, 291 S.E. 2d at 322. This evidence, *combined with* the fingerprint evidence, created a "logical and permissible inference that defendant's fingerprint could only have been impressed on the truck at the time of the robbery." *Id.*

Further, in *Strange* there was no evidence which suggested a reasonable inference that defendant might have been in the victim's truck for some other purpose at a time other than that of the theft. Here, by contrast, the evidence regarding the victim's children having access to her house and visiting there during her absence precludes the "substantial exclusion" of such a possibility which *Scott* appears to require.

Under the facts here, I find the *Scott* rationale and holding controlling. Because I believe that to uphold denial of the motion to dismiss would be inconsistent with *Scott,* I am compelled to vote to reverse.