STATE OF NORTH CAROLINA v. WILLIAM D. CAPPS AND BARRY EUGENE STATON

No. 8210SC761

(Filed 15 March 1983)

**1. Robbery § 4.2— common law robbery—sufficiency of evidence**

> Where a Pizza Hut employee was instructed to throw the night deposit on the roof of a bank and where the evidence tended to show that one palm print and six fingerprints made by defendant Staton were found on the roof of the bank; one palm print and two fingerprints made by defendant Capps were found on the roof of the bank; the prints, which were found the day after the robbery, were probably no older than forty-eight hours; neither defendant had a lawful reason to be on the roof; and defendant Capps had previously worked at the Pizza Hut and had the opportunity to learn the night deposit routine, the evidence was sufficient to withstand defendants' motions to dismiss the charge of common law robbery.

**2. Criminal Law § 91— time limit of Speedy Trial Act complied with**

> The trial judge was incorrect in treating defendants' cases as being joined in computing the excluded days pursuant to the Speedy Trial Act; however, under G.S. 15A-701(b)(9), G.S. 15A-701(b)(1), and G.S. 15A-701(b)(7) both defendants' trials began within the 120 days from their indictment as required by G.S. 15A-701(a1). G.S. 15A-926(b)(2)(a). The exclusions relevant to the Speedy Trial Act also brought defendants within the speedy trial provisions of the Interstate Agreement on Detainers Act, G.S. 15A-761.

APPEAL by defendants from *Godwin, Judge.* Judgment entered 2 April 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 19 January 1983.

Defendants were charged with armed robbery of an employee of the Pizza Hut restaurant on Western Boulevard in Raleigh. The State's evidence tended to show the following. Lynn

Davidson, Assistant Manager of the Pizza Hut, testified that, on 22 June 1980, she was working at night. After the Pizza Hut closed she cleaned up and then followed her usual procedure for closing up. She cleared out the register, made out the bank deposit, locked up the building, and drove to the Wachovia Bank on Western Boulevard to deposit the money. When she got out of her car and started to walk up to the night deposit box, she heard a voice on top of the roof of the bank say "throw the money on the roof or I'll shoot." She threw the money on the roof. She did not recognize the voice or see anyone on the roof. She returned to the Pizza Hut and called the police. On cross-examination, Davidson said she had worked with defendant Capps at the Pizza Hut and did not think it was his voice she heard from the roof of the bank.

Mr. Hatley, a manager at Wachovia Bank, testified that, on 22 June 1980, no one had permission to go on the roof of the Wachovia Bank on Western Boulevard.

Philip Robbins, a crime scene specialist for the Bureau of Identification for Wake County, testified that the morning after the robbery he found three palm prints and eleven fingerprints on the roof of the bank. Of these fourteen latent prints, all were identifiable except for one palm print and two fingerprints. One palm print and two fingerprints were made by defendant Capps, and one palm print and six fingerprints were made by defendant Staton. One fingerprint was made by another, unidentified, person. He said the prints were probably no older than forty-eight hours, but could possibly be as old as seventy-two.

Defendants did not present any evidence. They were found guilty of common law robbery and each received a ten-year sentence.

*Attorney General Edmisten, by Special Deputy Attorney General T. Buie Costen, for the State.*

*Appellate Defender Adam Stein and Assistant Appellate Defender Lorinzo L. Joyner, for defendant Capps.*

*Savage and Godfrey, by David R. Godfrey, for defendant Staton.*

VAUGHN, Chief Judge.

[1]   Defendants' first assignment is that the trial court erred in denying their motions to dismiss. They contend the evidence was insufficient to link them to the crime. A motion to dismiss requires the trial judge to consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference. *State v. Vincent*, 278 N.C. 63, 178 S.E. 2d 608 (1971). The question is whether there is substantial evidence, direct, circumstantial, or both, to support a finding that the offense charged has been committed and the accused committed it. *State v. Stewart*, 292 N.C. 219, 232 S.E. 2d 443 (1977). When the State relies on defendant's fingerprint found at the scene of the crime the rule is that "in order to withstand a motion to dismiss, there must be substantial evidence of circumstances from which the jury can find that the fingerprint could have been impressed only at the time the crime was committed." *State v. Berry*, 58 N.C. App. 355, 356, 293 S.E. 2d 650, 651 (1982), *affirmed per curiam*, --- N.C. ---, 298 S.E. 2d 386 (1983). *Accord, State v. Miller*, 289 N.C. 1, 220 S.E. 2d 572 (1975). In *Berry*, the defendant was tried for breaking or entering and larceny. The Court held that the evidence, one latent print inside the rear kitchen door, was sufficient to withstand defendant's motion to dismiss when the prosecuting witness lived alone and said she did not know defendant and, to her knowledge, he had never been in her house. In *Miller*, the defendant was charged with breaking and entering Williams Launderette. The Court held that the evidence, defendant's thumbprint on the lock of the broken cigarette machine which was inside Williams Launderette, and the fact that defendant said he had never been there, was sufficient to withstand his motion to dismiss.

In this case, the evidence, viewed in the light most favorable to the State, tends to establish the following facts: one palm print and six fingerprints made by defendant Staton were found on the roof of the bank; one palm print and two fingerprints made by defendant Capps were found on the roof of the bank; the prints, which were found the day after the robbery, were probably no older than forty-eight hours; neither defendant had a lawful reason to be on the roof; and defendant Capps had previously worked at the Pizza Hut and had the opportunity to learn the

night deposit routine. This evidence is sufficient to withstand defendants' motions to dismiss.

[2]  Defendants' second argument is that the trial court erred in not granting their motions to dismiss for failure to bring them to trial within the time limit required by the Speedy Trial Act. Defendants filed their motions on 29 March 1982. Their trial began on 1 April 1982. G.S. 15A-701(a1) requires defendants' trial begin within 120 days from their indictment. G.S. 15A-701(b) lists various time periods which may be excluded in computing the 120 days. In denying the motion the trial judge found the following facts:

3. Both defendants were indicted by the Wake County Grand Jury on November 9, 1981;

4. Both defendants were transported from the Florida Department of Corrections to Raleigh, North Carolina on November 11, 1981, both defendants being presently incarcerated in Florida for armed robbery;

5. Both cases were set on a Motions and Arraignment calendar on December 7, 1981, were continued for arraignment until December 14, 1981; and arraignment was completed in each case on December 18, 1981 by the entry of a plea of not guilty;

6. From December 7, 1981 and thereafter the cases have been, in effect, treated as if formally joined for trial;

7. Both cases were set for trial on January 29, 1982*, which trial date was continued because Capps' attorney had a conflicting trial calendared in another jurisdiction;

8. The cases were again calendared for trial on February 25, 1982, which trial date was continued because the Assistant District Attorney assigned to these cases as well as Staton's attorney, were involved in the trial of another matter;

9. The cases were again calendared for trial on March 30, 1982, on which date the motions for dismissal were filed.

* The correct date, as referred to consistently in the trial transcript, was January 25, 1982.

State v. Capps

Based on the findings of fact, the trial judge concluded, as a matter of law:

1. The period of eleven (11) days from December 7, 1981 until December 18, 1981 is excludable for purposes of this motion;

2. A period of twenty-eight (28) days following January 25, 1982 is excludable for purposes of this motion;

3. A period of seven (7) days following February 25, 1982 is excludable for purposes of this motion;

4. The State has prosecuted these cases within all time limits required by the North Carolina General Statutes and the Constitutions of the United States and the State of North Carolina;

5. Defendants have, at any rate, failed to show any prejudice to them arising out of any delays in the prosecution of these cases.

Based upon the foregoing, the Motions of both defendants are, hereby, DENIED.

Defendants did not take exception to any of the findings of fact, only to the denial of their motions to dismiss. "[T]he scope of review on appeal is confined to a consideration of those exceptions set out and made the basis of assignment of error. . . ." Rule 10(a), Rules of Appellate Procedure. Since defendants did not except to any findings of fact, our review is limited to whether the findings of fact support the conclusions of law. Defendants were indicted on 9 November 1981 and their trial was 1 April 1982, 142 days later. To withstand defendants' motions to dismiss at least twenty-two days must be excluded for each defendant.

The trial judge found that both cases were treated as if they were formally joined since 7 December 1981. The State, however, did not file a motion to join the cases, as required by G.S. 15A-926(b)(2)(a), until 1 April 1982. The motion was allowed over defendants' objections. Had defendants been formally joined in December 1981 the excludable days for each defendant would be excludable against the other. G.S. 15A-701(b)(6) allows excluding: "A period of delay when the defendant is joined for trial with a

codefendant as to whom the time for trial has not run and no motion for severance has been granted." *See State v. Shelton,* 53 N.C. App. 632, 281 S.E. 2d 684 (1981), *review denied,* 305 N.C. 306, 290 S.E. 2d 707 (1982). Since defendants were not formally joined until the day of trial G.S. 15A-701(b)(6) does not apply. Three other G.S. 15A-701(b) exclusions will apply to these defendants, however. G.S. 15A-701(b)(1) excludes: "Any period of delay resulting from other proceedings concerning the defendant. . . . The period of delay under this subdivision must include all delay from the time a motion or other event occurs that begins the delay until . . . the event causing the delay is finally resolved." G.S. 15A-701(b)(7) excludes: "Any period of delay resulting from a continuance granted by any judge if the judge granting the continuance finds that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial. . . ." And G.S. 15A-701(b)(9) excludes: "A period of delay resulting from defendant's being in the custody of a penal or other institution of a jurisdiction other than the jurisdiction in which the criminal offense is to be tried."

The trial judge was correct in finding that the defendants were treated as if their cases had been joined since December, but since he was incorrect in treating the cases as joined in computing the excluded days, because they were not formally joined, we shall recompute the excludable days for each defendant. As mentioned above, twenty-two days must be excludable for *each* defendant to withstand their motions to dismiss under G.S. 15A-703. Both defendants were indicted 9 November 1981 but arrived in North Carolina on 11 November, so two days are excludable for each defendant under G.S. 15A-701(b)(9). On 7 December 1981, both cases were calendared for arraignment. Arraignment was not completed until 18 December, so eleven days are excludable for both defendants under G.S. 15A-701(b)(1). The cases were calendared for 25 January 1982. Mr. Gamble, defendant Capps' attorney, had a case in another jurisdiction at that time and moved for a continuance. Defendants' cases were then set for 25 February which was the earliest they could be on a printed calendar. The judge excluded twenty-eight days for this continuance under G.S. 15A-701(b)(7). Defendant Capps contends that two weeks would have been an adequate continuance, and only fourteen days should have been excluded. Excluding fourteen

days for Capps brings his total of excluded days to twenty-seven, so his motion to dismiss was properly denied. On 22 February, Mr. Godfrey, defendant Staton's attorney, had another case calendared, and he requested a continuance. The judge granted his request and calendared the defendants' cases for 30 March. Because the judge had already excluded 25 January to 25 February, he only excluded 25 February to 3 March for Staton's continuance. Since we find that the 25 January continuance should have only counted as a two week exclusion, we must add the period of 22 February to 25 February to the continuance Staton's attorney requested, since it actually began on 22 February. The exclusion would be ten days, allowable under G.S. 15A-701(b)(7). Defendant Staton's excludable days total twenty-three, so his motion to dismiss was properly denied.

Defendants' third argument is that the trial court erred in failing to grant their motions to dismiss based on the speedy trial provisions of the Interstate Agreement on Detainers Act, G.S. 15A-761. Defendants contend that the charges must be dismissed because of the delay in trial. Article III requires the prisoner brought to trial within 180 days of his request for final disposition, and Article IV requires the trial to begin within 120 days of arrival of the prisoner in this State. The statute, however, expressly provides that any reasonable continuance may be granted. Clearly the exclusions mentioned above under the Speedy Trial Act would also apply here.

We have carefully reviewed defendants' assignments of error and find no error.

No error.

Judges WELLS and BRASWELL concur.